IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CHRISTOPHER GRABEK,

     Plaintiff,                       No. CIV S-10-2892 WBS GGH P

   vs.

KATHLEEN DICKINSON, Warden, et al.,

     Defendants.               FINDINGS & RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion for summary judgment filed February 17, 2012. By Order, filed on March 8, 2012, defendants were directed to re-serve their summary judgment motion upon plaintiff at his current address. In that order, plaintiff was granted an extension of time until April 15, 2012, to file an opposition. Defendants filed proof of re-service in this court on March 9, 2012. By Order, filed on March 19, 2012, the court, inter alia, reiterated the April 15th deadline for plaintiff's opposition.

        Plaintiff has not filed an opposition to defendants' motion for summary judgment.[1] In the order directing service filed February 22, 2011, the court stated that "[i]f

---

[1] In vacating plaintiff's own defective motion for summary judgment by Order filed on March 8, 2012, the undersigned did so, as also noted in the Order, filed on March 19, 2012, n. 2,

1

plaintiff does not serve and file a written opposition to the motion or a request to postpone consideration of defendants' motion, the court may consider the failure to act as a waiver of opposition to defendant's motion." See Local Rule 230 (l).  Defendants' notice of motion also stated that the motion was submitted pursuant to Local Rule 230(l).

A district court may not grant a motion for summary judgment simply because the nonmoving party does not file opposing material, even if the failure to oppose violates a local rule.  Martinez v. Stanford, 323 F.3d 1178 (9th Cir. 2003); Brydges v. Lewis, 18  F.3d 651, 652 (9th Cir. March 9, 1994), citing Henry v. Gill Industries, Inc., 983 F.2d 943, 950 (9th Cir. 1993).  However, when the local rule does not require, but merely permits the court to grant a motion for summary judgment, the district court has discretion to determine whether noncompliance should be deemed consent to the motion.  Id.

In the instant case, plaintiff has been warned that his failure to oppose a motion for summary judgment may be deemed a waiver of opposition to the motion.  Based on plaintiff's failure to file an opposition, the court concludes that plaintiff has consented to defendants' motion for summary judgment.  In the alternative, the court finds that defendants' motion has merit.  Plaintiff alleges he was subjected to inadequate medical care for a serious medical condition by defendants Kathleen Dickinson, former warden at California Medical Facility (CMF); CMF Chief Medical Officer Dr. Aguilera; CMF Chief Deputy of Clinical Services Dr. Bick; CMF Licensed Psychiatric Technician Dr. P. Pena; and his primary care physician at CMF, Dr. Mo.  Complaint, p. 1.  The gravamen of plaintiff's complaint is that, following a November 13, 2008, consultation and testing at the University of California, San Francisco Medical Center (UCSF) for plaintiff's head and neck pain, CMF failed to pay for the initial consultation, which resulted in plaintiff being erroneously billed for UCSF'S services and the subsequent surgical procedure plaintiff, a Radio Frequency Ablation (RFA) at UCSF, was to

---

without prejudice to plaintiff's use of documentation therein to support his opposition to defendants' motion for summary judgment.

receive was delayed for six months when the hospital refused all medical visits and referrals for plaintiff until the billing matter was resolved. Id., at 3-4. During this six-month period wherein plaintiff alleges he was in severe pain at the back of his head and neck, his primary care physician discontinued his Morphine, substituting Methodone and Tordol Phenegran, which made plaintiff so sick that he vomited the medication up, making his condition worse. Id., at 4.

Plaintiff claims defendant Kathleen Dickinson as warden was responsible for overseeing the prison's operation, including the medical department; that defendant CMO Dr. Aguilera is responsible for oversight of all CMF's medical matters and is therefore to blame for not having the billing issue resolved more quickly and for not having plaintiff referred back to UCSF sooner; that defendant Dr. Bick is also responsible for failing to investigate and resolve the billing problem as well as for not seeing to it that plaintiff had the proper medical treatment; that defendant Dr. Pena, who conducted an interview of plaintiff on defendant Dr. Bick's behalf, is responsible for knowing plaintiff was in severe pain but failed to act to assist plaintiff; and that defendant Dr. Mo, knowing plaintiff was in excruciating pain, nevertheless substituted two medications for one that was working, making plaintiff so nauseous he vomited the medications up, which only exacerbated the pain in plaintiff's head and neck. Complaint, pp, 4-5.

As plaintiff has failed to oppose any facts as stated by defendants, the court finds opposition thereto waived. Defendants produce evidence indicating that plaintiff underwent a procedure, performed by non-defendant Dr. Pasvankas at UCSF, known as a cervical medical branch block (CMBB) on November 13, 2008 at UCSF, the purpose of which was to determine if a small amount of local anesthetic on pain-transmitting nerves from the cervical facet joint would decrease or eliminate pain (for a period of up to three months); if so, defendant Dr. Mo could schedule plaintiff for a radio frequency ablation (RFA), a procedure that involves an irreversible destructive lesion of the medial branch nerve to block pain and might provide relief for from six months to a year. See defendants' statement of facts (DSF) nos. 16 & 20, relying on the declaration of defendant Dr. Mo, at Exhibit A, ¶¶ 20, 24, citing plaintiff's attached health

records,[2] stamped UHR 033, 040-045.  Defendants provide support for the statement that, on December 9, 2008, Dr. Mo saw plaintiff, who reported that there was relief from pain on the right side of his neck from the CMBB but pain on the left side had increased, and that defendant Mo requested approval for the RFA per plaintiff's request, which RFA request defendant Dr. Aguilera approved on December 12, 2008.  DSF no. 21, Mo Dec., ¶ 25, citing plaintiff's attached health records, UHR 040045A-047.  Because plaintiff was hospitalized for mental health treatment in January and February of 2008, defendant Dr. Mo next saw plaintiff on March 19, 2008;[3] defendant Mo avers that plaintiff would not have been sent for an RFA until his mental health had stabilized.  DSF no. 22, Mo Dec., ¶¶ 26-27, citing plaintiff's health records attached, UHR 048-052.  On March 19, 2009, defendant Mo noted plaintiff, for a long time following the CMBB, had done well with his neck pain but wanted an RFA because his pain had resumed.  DSF no. 23, Mo Dec., ¶ 27, medical record UHR 052.  Defendant Mo ordered salsalate, 500 mg., one or two tablets, t.i.d., for pain; a TENS unit for pain; and requested a follow-up with UCSF for the RFA.  Id., medical record UHR 053.  Defendant Aguilera approved the consultation on March 25, 2009.  Id., medical record UHR 054.  Plaintiff did not tell defendant Mo at that time that UCSF had refused to schedule an appointment for the RFA because of a billing dispute with CDCR, or that he had been sent a bill asking him to pay the balance owed on his account for services previously provided.  DSF no. 23, Mo Dec., ¶ 27.  On April 9, 2009, scheduling staff at CMF noted an appointment could not be made because "CDCR" had a "monetary issue" and that the services request was being returned by UCSF's Financial Counseling department to plaintiff's primary care physician.  DSF no. 24, citing Mo Dec. ¶ 28, see UHR 054.

\\\\\

---

[2] Defendants' statement of facts and supporting documents cited were filed under seal.

[3] In the statement of facts, that date is erroneously identified as March 19, 2001, but the supporting documents indicate the year as 2008.

Also on April 9, 2009, UCSF sent plaintiff a letter demanding that he pay the balance owed on his account, a billing department procedure UCSF should not have used for services provided to plaintiff. DSF no. 25, citing Ex. B, Declaration of Dawn Rumore, Staff Services Manager II for the Healthcare Invoice, Data and Provider Services Branch (HIDPS) of the California Correctional Health Care Services (CCHS), ¶¶ 1, 3, attachment 1.[4] According to declarant Rumore (not a defendant), the proper procedure for UCSF to follow at the time would have been to send invoices to the HIDPS Branch in Sacramento of the California Correctional Health Care Services (CCHCS), an entity created by the federal receiver in Plata v. Schwarzenegger, No. C01-1351 THE (N.D. Cal), which would put the invoices together for each prison requesting the service, the invoices then to be sent to each institution for review and approval. DSF no. 26, citing Rumore Dec., ¶¶ 2, 4. According to Ms. Rumore, defendants Warden Dickinson, Dr. Bick, Dr. Aguilera, and Dr. Mo did not have any responsibility for processing invoices from contract providers such as UCSF, and no authority either to pay bills or resolve billing disputes, such authority resting with HIDPS, and ultimately with the federal receiver. DSF no. 27, citing Rumore Dec., ¶ 5. Although plaintiff was seen by defendant Mo on April 13, 2009, and on April 24, 2009, plaintiff had submitted an inmate appeal, regarding UCSF's having billed him for previous services and not having scheduled him for an RFA, defendant Mo declares he was unaware of the problem. DSF nos. 28-29, citing Ex. A, Mo Dec., ¶¶ 29-30. On May 11, 2009, plaintiff reported to defendant Mo that he had still not been given the UCSF RFA appointment and defendant Mo again requested the appointment, as well as renewed plaintiff's medications, which request was approved the following day. DSF no. 31, Mo Dec., ¶ 32, medical records UHR 059-060. When on June 5, 2009, during a follow-up visit, plaintiff told defendant Mo he still had not been scheduled for an RFA appointment at UCSF due to a billing dispute and showed him a bill UCSF had sent plaintiff seeking payment, defendant

---

[4] Ex. B is not sealed.

1   Mo contacted defendant Bick about the billing letter to plaintiff and was told to give it to CMF
2   staff responsible for processing specialists' bills which defendant Mo did. DSF no. 33. Dr. Mo
3   was told that plaintiff was not responsible for the charges. Id.  Defendant Mo neither had
4   responsibility for nor authority to pay the bills or to schedule the UCSF appointment. Id.  The
5   billing issue was resolved and plaintiff received the RFA treatment on June 25, 2009, after which
6   he complained to defendant Mo, on July 2, 2009, that his pain was worse. DUF nos. 34-38,
7   citing Ex. B Rumore Dec. ¶¶ 7-8, attachments 2 & 3; Ex. A, Mo Dec. ¶ 36, attached plaintiff's
8   medical records UHR 068-071.

9           Defendant Pena's only involvement in plaintiff's case was interviewing plaintiff
10  for a grievance filed by plaintiff in October of 2009, seeking $100,000 for the damages for the
11  delay in receiving the RFA treatment which proved unsuccessful. DSF no. 50, citing Complaint,
12  pp. 7-12. Defendant Pena sets forth that plaintiff cannot show his involvement in any delay in
13  the scheduling of the RFA, which treatment had already occurred in June of 2009, and, in any
14  event the money damages plaintiff sought was unavailable through the grievance system. DSF
15  nos. 35-37, 50. Moreover, as defendant argues (MSJ, docket # 41-1, p. 11), Pena's involvement
16  in the grievance process does not state a claim. Prisoners do not have a "separate constitutional
17  entitlement to a specific prison grievance procedure." Ramirez v. Galaza, 334 F.3d 850, 860 (9th
18  Cir. 2003), citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Even the non-existence of,
19  or the failure of prison officials to properly implement, an administrative appeals process within
20  the prison system does not raise constitutional concerns. Mann v. Adams, 855 F.2d at 640. See
21  also, Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993); Flick v. Alba, 932 F.2d 728 (8th Cir.
22  1991). Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D.Ill. 1982) ("[A prison] grievance procedure
23  is a procedural right only, it does not confer any substantive right upon the inmates. Hence, it
24  does not give rise to a protected liberty interest requiring the procedural protections envisioned
25  by the fourteenth amendment").
26  \\\\\

Although it is undisputed that plaintiff was wrongly assessed charges for his medical treatment at UCSF and therefore his appointment for an RFA was delayed by several months, plaintiff, in failing to oppose the motion, must be found not to have raised any issue as to whether any of the defendants were, in fact, responsible or had any authority to pay the UCSF bills, order their payment, or to assure an earlier RFA appointment. Moreover, plaintiff does not oppose defendants' statement that the long-awaited RFA provided no relief and that, in fact, his pain grew worse. Mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). As to plaintiff's allegations that defendant Mo did not provide the pain medication, morphine, that plaintiff sought, this claim does not amount to an Eighth Amendment violation where plaintiff disagreed with what appears to be an exhaustive regimen of medication and other treatment provided by defendant Mo and other physicians for plaintiff during the time at issue. The principle is well-established that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Finally, plaintiff fails to sustain any claim of liability against defendant Pena. The court has reviewed the exhibits provided by plaintiff in his own defective, extremely abbreviated and vacated motion (or cross-motion) for summary judgment, filed on February 27, 2012, which the court on March 8, 2012, vacated without prejudice to the use of the exhibits within his opposition to defendants' motion for summary judgment, an opposition which did not materialize despite the court's having ordered re-service of defendants' summary judgment motion on his latest address of record (of which re-service defendants filed their proof on March 9, 2012), and despite two orders, filed on March 8, 2012 and on March 19, 2012, both of which extended plaintiff's time to file any opposition until April 15, 2012. Plaintiff's exhibits were submitted with the aim of showing that he was seen multiple times in March and June 2009 for debilitating pain with the goal of demonstrating that the delayed surgery caused by the unpaid bill to UCSF resulted in

unnecessary and wanton infliction of pain. See docket # 45 (vacated). In failing to oppose the dispositive motion, however, plaintiff has not raised any genuine issue in the face of defendants' showing that the RFA procedure, when it did occur, actually relieved any pain and suffering of the plaintiff's. Therefore, defendants' motion should be granted.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' unopposed February 17, 2012 (docket # 41), motion for summary judgment, re-served on March 9, 2012 (docket # 48), be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 3, 2012

      /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

GGH:009
grab2892.46